**VIRGINIA SOCIETY FOR HUMAN LIFE, INC., et al., Plaintiffs,**

v.

**Donald S. CALDWELL, et al., Defendants.**

Civ. A. No. 95–1042–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 30, 1995.

Donald Wise Huffman, Donald W. Huffman & Associates, P.C., Roanoke, VA, James Bopp, Jr., and Richard E. Coleson, Bopp, Coleson & Bostrom, Terre Haute, IN, for plaintiffs.

Alice Ann Berkebile, James S. Gilmore, III, and Lee Melchor Turlington, Office of the Attorney General, Richmond, VA, for defendants.

## CORRECTED MEMORANDUM OPINION

WILSON, District Judge.

Plaintiffs, Virginia Society for Human Life, Inc. ("VSHL"), and Andrea Sexton, bring this action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for infringement of their rights to freedom of speech in violation of the First and Fourteenth Amendments to the United States Constitution. VSHL is a nonprofit, nonstock, public interest corporation that purportedly engages in "issue advocacy" in Virginia through the preparation and distribution of "voter guides."[1] Sexton is a Virginia resident who distributes those guides in Virginia at her own expense. Defendants are Virginia's Commonwealth's Attorneys and members of the State Board of Elections charged with enforcing Virginia's election laws.[2] VSHL and Sexton maintain that various provisions of Virginia's Campaign Finance Disclosure Act, Va.Code Ann. §§ 24.2–901 to 24.2–930 (1993), are overly broad and chill their free speech rights. They seek a declaratory judgment declaring the challenged provisions unconstitutional, and they seek to enjoin defendants from enforcing those provisions. Defendants contend that the challenged provisions do not apply to VSHL and Sexton and that the relief sought should be denied. The court finds that the challenged provisions arguably apply to VSHL and Sexton and have a chilling effect on their freedom of speech, if not narrowed by construction. Because a narrow reading could cure constitutional infirmity in two of the challenged provisions, this court, in the interest of avoiding potentially unnecessary constitutional adjudication and in the interest of federalism and comity, will submit issues of state statutory construction involving these provisions to the Virginia Supreme Court. In the meantime, however, this court will preliminarily enjoin enforcement of the challenged provisions.

---

1. *See* Appendix 3(A)(i); 3(A)(ii); 3(B).

2. Named defendants are Donald S. Caldwell, Pamela M. Clark, Dr. George M. Hampton, and Bruce Meadows. The Commonwealth's Attorneys for the Commonwealth of Virginia have been certified as a defendant class pursuant to Federal Rule of Civil Procedure 23 in accordance with the court's order dated October 11, 1995.

## I.

VSHL and Sexton challenge three sections of Virginia's Campaign Finance Disclosure Act, Va.Code Ann. § 24.2–908, § 24.2–910, and § 24.2–1014.[3] Section 24.2–908 requires, with certain exceptions, "each person and political committee which anticipates receiving contributions or making expenditures in excess of $100" to file a "statement of organization" with the State Board of Elections detailing organizational, identifying and financial information. Section 24.2–910 requires persons and organizations subject to § 24.2–908 to maintain records and file disclosure reports. It also requires, in part, persons and political committees making "independent expenditures" to maintain records and report "contributions" received and "expenditures" made of:

1. Any funds, in the aggregate, in excess of $500 for a statewide election or $100 for any other election expended for the purpose of influencing the outcome of any election;

2. Any funds in any amount expended to publish or broadcast to the public any material referring to a candidate by name, description, or other reference and (i) advocating his election or defeat, (ii) setting forth his position on any public issue, voting record, or other official acts, or (iii) otherwise designed to influence individuals to cast their votes for or against him or to withhold their votes from him; and

3. Any funds in any amount expended to publish or broadcast to the public any material promoting or opposing a question submitted to the voters in a referendum.

Va.Code Ann. § 24.2–910.

The third challenged section, § 24.2–1014, makes it unlawful "to cause any writing . . . to appear concerning any potential nominee or candidate, or concerning any question to be submitted to the voters unless such writing plainly identifies the person responsible for it," § 24.2–1014(B), and if that person is required to file a statement of organization under § 24.2–908, the writing must contain a registration number provided by the State Board of Elections. § 24.2–1014(B)(3).

On several occasions, state circuit courts have not only broadly construed similar provisions of the predecessor to Virginia's Campaign Finance Disclosure Act, the Fair Election Practice Act, Va.Code Ann. §§ 24.1–252 to 24.1–263.1 (repealed 1993), but also have relied on those similarly worded provisions to impose unconstitutional prior restraints. In 1989, for example, Virginia held elections for Governor, Lieutenant Governor, Attorney General, and the General Assembly. The Virginia Leadership Council ("VLC"), an unincorporated association consisting of various Virginia citizens, prepared over one million voter cards comparing the political positions taken by the major parties' candidates. On November 4, 1989, three days before the election, a judge of the Circuit Court of the City of Richmond enjoined VLC and an individual "from distributing any literature of a political nature without first identifying by name and address the person causing the literature to be distributed, and including on any literature distributed the required authorization statement."[4] By its terms, the injunction expired after the election.

■ In connection with the 1989 elections, the "Committee for Providing Truth in Political Candidate Positions," an unincorporated association in Fairfax County, Virginia, consisting of various Fairfax County residents, prepared a handbill entitled "Read Before You Vote." The Democratic Party of Virginia ("DPV"), brought suit against that association and the VLC seeking an injunction. The day before the election, the Circuit Court of Fairfax County issued an unconstitutional prior restraint enjoining them from distributing or causing to be distributed the "Read Before You Vote" handbills and the "Leadership '89 Voter Cards" as well as "any other materials or publications or writings as defined in 24.1–277."[5] The injunction was effective "until such time as the defendants

---

3. *See* Appendix 1(A); 1(B); 1(C); 1(D).

4. *See* Appendix 2(A)(i).

5. *See* Appendix 2(B).

[could] demonstrate to the Court compliance with the law." [6]

In 1993, elections were held again for Governor, Lieutenant Governor, Attorney General, and the General Assembly. Following a similar pattern, the Circuit Court of Fairfax County entertained a suit shortly before the election to enjoin distribution of certain handbills. On October 27, 1993, the Circuit Court enjoined the defendants "from distributing any writing about candidates for any office elective ... without first filing a statement of organization with the [Virginia State] Board [of Elections]" and identified on the writing "the person responsible therefore" and the registration number.[7] The Virginia Supreme Court dissolved the injunction on November 1, 1993, without opinion.[8]

VSHL and Sexton now maintain that they would like to distribute voter guides that are equivalent to voter guides found unlawful and enjoined in connection with the 1989 and 1993 elections. However, they are concerned that they would be subject to civil and criminal penalties if their voter guides do not conform with Virginia law as that law has been applied by Virginia's circuit courts. On October 11, 1995, this court held a hearing on VSHL's and Sexton's motion for a preliminary injunction to enjoin enforcement of the challenged provisions. At the conclusion of the hearing, the court took the motion for preliminary injunction under advisement and issued a temporary restraining order restraining application of the challenged provisions to VSHL and Sexton, except in the case of "express advocacy for the election or defeat of a specific candidate." *Virginia Society for Human Life, Inc. v. Caldwell,* Civil No. 95–1042–R, (W.D.Va. Oct. 11, 1995) (temporarily enjoining enforcement of challenged statutes).

## II.

■ Federal courts should abstain from deciding constitutional claims if a state court's interpretation of an unclear state statute might eliminate the constitutional issue. *Railroad Comm'n v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Educational Serv., Inc. v. Maryland State Bd. for Higher Educ.,* 710 F.2d 170 (4th Cir. 1983). Defendants maintain that the challenged provisions do not apply to pure issue advocacy, and thus, injunctive relief is unnecessary as to plaintiffs' "voter guides." [9] In any event, defendants urge the court to submit constitutional questions to the Virginia Supreme Court. VSHL and Sexton respond that the provisions apply to them and that similar provisions of predecessor statutes have been broadly applied by the Virginia circuit courts to enjoin "issue advocacy," thus chilling their freedom of speech. They claim the challenged provisions are excessively overbroad, that no construction can save them, and that this court should declare them unconstitutional.

This court rejects the course of action suggested by each side. First, as to defendants' suggested course of action, *Pullman* counsels abstention, not abdication. The challenged provisions are arguably overbroad, and that potential overbreadth has been burdened further by the unhelpful constructions of various state circuit courts that have chilled First Amendment speech and imposed unconstitutional prior restraints. The constitutionality of the provisions is properly challenged in federal court, and the court cannot fulfill its responsibility by sending that constitutional challenge elsewhere. *Pullman* and federalism counsel that issues of state statutory construction, but not constitutional interpretation, be submitted to the Virginia Supreme Court. Second, as to plaintiffs' suggested

---

**6.** *Id.*

**7.** *See* Appendix 2(C).

**8.** Defendants in the Fairfax County Circuit Court action filed suit in the United States District Court for the Eastern District of Virginia immediately following the Circuit Court's injunction. The district court dismissed the suit on the authority of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Court of Appeals concluded that abstention was proper. *See Family Foundation, Inc. v. Brown,* 9 F.3d 1075 (4th Cir.1993).

**9.** In a recent opinion letter, the Attorney General of the Commonwealth of Virginia narrowly construed Va.Code Ann. § 24.2–1014, as he now urges this court to do. (Opinion Letter from Attorney General of the Commonwealth of Virginia to M. Bruce Meadows, July 13, 1995.)

course of action, this court has concluded that there are narrow constructions that the Virginia Supreme Court might place on § 24.2–908 and § 24.2–910 that would eliminate some constitutional issues. Under such circumstances, the court is satisfied that the provident course is to certify the issues of state statutory construction to the Virginia Supreme Court and, while awaiting that court's response, narrow application of the provisions by preliminary injunction. *See Roe v. Alabama,* 43 F.3d 574 (11th Cir.1995).

### Va.Code Ann. § 24.2–908

At first blush, § 24.2–908 appears to apply to organizations engaged in pure issue advocacy and not simply electioneering. The "statement of organization" required by § 24.2–908, however, is tied to the receipt of contributions or the making of expenditures "for the purpose of influencing the outcome of an election." *See* § 24.2–901.

In *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the United States Supreme Court narrowly construed the language "for purpose of influencing the outcome of an election" contained in the Federal Election Campaign Act, by tying it to a major purpose of the Act's disclosure provision—"to reach only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate," and thereby, avoided its application to "groups engaged purely in issue discussion."

*Id.* at 79, 96 S.Ct. at 664.[10] It is conceivable that the Virginia Supreme Court might do likewise with § 24.2–908. It would be incongruous for federal courts to narrowly construe the Federal Election Campaign Act so as to avoid constitutional challenge and then reach out and invalidate Virginia's Campaign Finance Disclosure Act without submitting pivotal statutory construction issues to the Virginia Supreme Court.

### Va.Code Ann. § 24.2–910

Section 24.2–910 appears facially overbroad when read apart from the definitions of § 24.2–901. The disclosure requirements complained of, however, are once again tied to the receipt of "contributions" and the making of "expenditures," § 24.2–910(B), "for the purpose of influencing the outcome of an election." *See* § 24.2–901(A). Therefore, just as a narrow statutory construction of § 24.2–908 might eliminate the constitutional issues presented in the challenge to that section, narrow construction of § 24.2–910 might eliminate the constitutional issues presented in the challenge to that section as well.

### Va.Code Ann. § 24.2–1014

■ The challenge to § 24.2–1014 is more problematic in light of *McIntyre v. Ohio Elections Commission,* —— U.S. ——, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). *McIn-*

10. "Buckley adopted the 'express advocacy' requirement to distinguish discussion of issues and candidates from more pointed exhortations to vote for particular persons." *Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 249, 107 S.Ct. 616, 623, 93 L.Ed.2d 539 (1986). This court recognizes that the line between "issue advocacy" and advocacy for the election or defeat of a candidate will often be a hard line to draw. But given the clash between the First Amendment and the states' strong interest in ensuring that elections are fair and open to real public scrutiny, lines must be drawn.

    VSHL argues that § 24.2–908 and § 24.2–910 cannot be applied to an organization that has issue advocacy as its primary purpose. Indeed, the Court of Appeals for the D.C. Circuit intimated that the Federal Election Commission avoided a serious "First Amendment issue of the sort seen in cases like *NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 1170–71, 93 L.Ed.2d 1488 (1958)," when it applied "the major pur-

pose test" to the "core purpose of the organization itself, [and] not the individual expenditure or contribution." *Akins v. Federal Election Comm'n,* 66 F.3d 348, 355 (D.C.Cir.1995). The D.C. Circuit's conclusion, however, might be somewhat at odds with the Supreme Court's reasoning in *Buckley.* "The *Buckley* court concluded that the disclosure of a group's independent campaign expenditures serves the important governmental interest of 'shed[ding] the light of publicity' on campaign financing, thereby helping voters to evaluate the constituencies of those who seek federal office. As a result, the burden of disclosing independent expenditures generally is 'a reasonable and minimally restrictive method of furthering First Amendment values by opening the basic processes of our federal election system to public view.'" *Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.,* · 479 U.S. 238, 265, 107 S.Ct. 616, 632, 93 L.Ed.2d 539 (1986) (O'Connor, J., concurring in part and concurring in the judgment and quoting *Buckley,* 424 U.S. at 81–82, 96 S.Ct. at 664–665) (citations omitted).

*tyre* presented the question of whether an Ohio statute that prohibited the distribution of anonymous campaign literature was "a 'law ... abridging the freedom of speech' within the meaning of the First Amendment." *McIntyre*, —— U.S. at ——, 115 S.Ct. at 1514. McIntyre opposed an imminent referendum on a proposed school tax levy and distributed leaflets at a public meeting at an Ohio middle school. She composed and printed the text of the leaflets on her home computer and paid a professional printer to make additional copies. Some of the leaflets identified her as the author and others simply purported to be from "Concerned Parents and Tax Payers." All of the leaflets urged the voters to "vote no" on the referendum. The Ohio Elections Commission found that McIntyre's distribution of unsigned leaflets violated Ohio election law and imposed a $100 fine. The Ohio Supreme Court rejected McIntyre's constitutional challenge to the statute. The Supreme Court granted *certiorari* and reversed.

The Court traced the essential role of anonymous speech, finding that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *Id.* at ——, 115 S.Ct. at 1516. According to the Court, "[t]he freedom to publish anonymously extends beyond the literary realm" to political speech. *Id.* at ——, 115 S.Ct. at 1516. The Court then determined that the statute involved placed a limitation on "core political speech" that was subject to "exacting scrutiny" and that could survive only if "narrowly tailored" to serve an overriding state interest. *Id.* at ——, 115 S.Ct. at 1519.

Ohio sought to justify the statute stating that it advanced the state's interest in "preventing fraudulent and libelous statements and its interest in providing the electorate with relevant information." *Id.* at ——, 115 S.Ct. at 1519. The Court concluded that the statute accomplished neither purpose advanced by the state and was unconstitutionally overbroad:

As this case demonstrates, the prohibition encompasses documents that are not even arguably false or misleading. It applies not only to the activities of candidates and their organized supporters, but also to individuals acting independently and using only their own modest resources. It applies not only to elections of public officers, but also to ballot issues that present neither a substantial risk of libel nor any potential appearance of corrupt advantage. It applies not only to leaflets distributed on the eve of an election, when the opportunity for reply is limited, but also to those distributed months in advance. It applies no matter what the character or strength of the author's interest in anonymity.

*Id.* at —— – ——, 115 S.Ct. at 1521–22 (footnotes omitted).

Practically speaking, § 24.2–1014(B) is indistinguishable from the statute struck down in *McIntyre* and cannot, in its entirety, survive exacting scrutiny. Although the court finds important distinctions between anonymous pamphleteering in connection with a referendum and anonymous pamphleteering in connection with an election, § 24.2–1014(B) applies to both. Moreover, under § 24.2–1014(B)(3)(b) it is "unlawful for any person to cause any writing ... to appear concerning any potential nominee or candidate ... unless such writing plainly identifies the person responsible for it." The provision makes no pretense of limiting itself to electioneering. Therefore, although *Pullman* counsels abstention as to § 24.2–908 and § 24.2–910, the reach of § 24.2–1014(B)(3)(b) is clear, and it does not survive "strict scrutiny."

### III.

▆ The standard for preliminary injunctions in this circuit was established in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir.1977). Four factors must be considered:

1. the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;
2. the likelihood of harm to the defendant if the injunction is granted;
3. the likelihood that the plaintiffs will succeed on the merits; and
4. the public interest.

*Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.2d 353, 359 (4th Cir.1991). These factors are not weighted equally. The "balance of hardships," determined by comparing the relevant harms to the parties, is the most important determination. *Hughes Network Sys. v. Interdigital Communications Corp.,* 17 F.3d 691 (4th Cir.1994). The determination of the balance of harms will dictate how strong a likelihood of success the plaintiffs must show. *Id.* Applying the *Blackwelder* standard, the court finds that the balance of harms weighs greatly in favor of the plaintiffs, that plaintiffs have shown serious questions for decision, and that the issuance of an injunction would serve the public interest. Accordingly, the court will enter the preliminary injunction.

■ When an individual's free speech rights are infringed, irreparable harm is generally inflicted. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In this case, the chilling effect of a broad reading of the challenged provisions is clear, and constitutes irreparable harm.

The degree of harm to be suffered by the defendants, should an injunction issue, is extremely slight. Defendants have articulated no lasting harm, and the only harm apparent would be that voters in this year's elections would have minimally less information about the origins of "issue advocacy" literature distributed during election season. Moreover, defendants assert that the challenged provisions do not even apply to the "issue advocacy" in which VSHL and Sexton seek to engage. Thus, the balance of harms between the injury to plaintiffs' First Amendment freedoms and the negligible harm to defendants, tips dramatically in favor of VSHL and Sexton.

■ When the balance of harms greatly favors the plaintiffs, as here, they need only show "grave or serious" questions for ultimate decision. *L.J. By and Through Darr v. Massinga,* 838 F.2d 118, 120 (4th Cir.1988), *cert. denied,* 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989). Given the substantial questions of the constitutionality of the challenged Virginia statutes discussed in Part II, above, the court concludes that plaintiffs have met this burden of showing serious issues for decision by the court.

The public interest is the last factor to be considered, and it too, points to the issuance of an injunction in this case. Given the importance of core political speech and the possible chilling effect of the statutory scheme, the court concludes that an injunction limiting enforcement of the relevant statutes would be in the public interest.

## IV.

For the reasons stated, the court will enter a preliminary injunction enjoining the enforcement of § 24.2–908 and § 24.2–910, as indicated above, as applied to VSHL and Sexton. The court also will enjoin enforcement of § 24.2–1014(B)(3)(b) as to any person.

### *ORDER*

October 21, 1995

In accordance with the Memorandum Opinion entered this day■, the court finds that plaintiffs, Virginia Society for Human Life, Inc. and Andrea Sexton will be irreparably harmed were preliminary injunction not to issue, that defendants will not be irreparably harmed by the issuance of a preliminary injunction, that plaintiffs have shown a likelihood of success on the merits, and that the public interest will be served by the court's injunction. Accordingly, it is hereby

### ORDERED AND ADJUDGED

that

(1) All named defendants and the defendant class, all Commonwealth's Attorneys for the Commonwealth of Virginia, are hereby enjoined from enforcing the following provisions of the Virginia Code

as to VSHL and Sexton pending final judgment on the merits of this case:

    (a) Virginia Code § 24.2–908, except as to contributions and expenditures for express advocacy of the election or defeat of a specific candidate;

    (b) Virginia Code § 24.2–910, except as to contributions received and expenditures made for express advocacy of the election or defeat of specific candidate;

(2) All named defendants and the defendant class, all Commonwealth's Attorneys for the Commonwealth of Virginia, are hereby enjoined from enforcing the following provisions of the Virginia Code pending final judgment on the merits of this case:

    (a) Virginia Code § 24.2–1014(B)(3)(b).

(3) Bond for the preliminary injunction is set in the amount of $250 per plaintiff to be posted within five days.

### APPENDIX 1(A)

§ 24.2–901. **Definitions.**—A. As used in this chapter, unless the context requires a different meaning:

*"Campaign committee"* means the committee designated by a candidate to receive all contributions and make all expenditures for him or on his behalf in connection with his nomination or election.

*"Contribution"* means money and services of any amount, and any other thing of value over $100, given, advanced, promised, loaned, or in any other way provided to a candidate, campaign committee, political committee, inaugural committee, or person for the purpose of influencing the outcome of an election or defraying the costs of the inauguration of a Governor, Lieutenant Governor, or Attorney General. "Contribution" includes money, services, or things of value in any way provided by a candidate to his own campaign.

*"Expenditure"* means money and services of any amount, and any other thing of value over $100, paid, promised, loaned, provided, or in any other way disbursed by any candidate, campaign committee, political committee, inaugural committee, or person for the purpose of influencing the outcome of an election or defraying the costs of the inauguration of a Governor, Lieutenant Governor, or Attorney General.

*"Inaugural committee"* means any committee which anticipates receiving contributions or making expenditures, from other than publicly appropriated funds, for the inauguration of the Governor, Lieutenant Governor, or Attorney General and related activities.

*"Independent expenditure"* means an expenditure made by any person or political committee which is not made to, controlled by, coordinated with, or made upon consultation with a candidate, his campaign committee, or an agent of the candidate or his campaign committee.

*"Person"* means any individual or corporation, partnership, business, labor organization, membership organization, association, cooperative, or other like entity.

*"Political action committee"* means any organization, other than a campaign committee or political party committee, established or maintained in whole or in part to receive and expend contributions for political purposes.

*"Political committee"* means any state political party committee, congressional district political party committee, county or city political party committee for a county or city with a population of more than 100,000, organized political party group of elected officials, political action committee, or other committee or group of persons which receives contributions or makes expenditures for the purpose of influencing the outcome of any election. The term shall not include: a campaign committee or a political party committee exempted pursuant to § 24.2–911.

B. For the purpose of applying the filing and reporting requirements of Article 3 (§ 24.2–908 et seq.) and Article 4 (§ 24.2–914 et seq.) of this chapter, the terms "person," "political action committee," and "political committee" shall not include an organization holding tax-exempt status under § 501(c)(3) of the United States Internal Revenue Code which, in providing information to voters, does not advocate or endorse the election or

defeat of a particular candidate, group of candidates, or the candidates of a particular political party. (1970, c. 462, § 24.1–255; 1975, c. 515, § 24.1–254.1; 1981, c. 425, § 24.1–254.2; 1983, c. 119; 1988, c. 616; 1991, cc. 9, 474, 709, § 24.1–254.3; 1993, cc. 641, 776, 921; 1994, c. 510.)

**The 1994 amendment added subsection B.**

## APPENDIX 1(B)

**§ 24.2–908. Statement of organization.**—Each person and political committee which anticipates receiving contributions or making expenditures in excess of $100 shall file with the State Board a statement of organization (i) within ten days after its organization or, if later, within ten days after the date on which it has information which causes the person or committee to anticipate it will receive contributions or make expenditures in excess of $100 or on which it otherwise becomes subject to the provisions of this chapter, and (ii) annually thereafter by January 15. This requirement shall not apply to a person or committee whose only disbursement is in the form of a contribution and which itself receives no contributions from which the disbursement is made.

The statement of organization shall include:

1. The name and address of the person or committee;

2. The names, addresses, and relationships of affiliated or connected organizations;

3. The area, scope, or jurisdiction of the person or committee;

4. The name, residence and business addresses, and position of the custodian, if any, of books and accounts;

5. The name, residence address, and position of other principal officers, including officers and members of the finance committee, if any;

6. The name, address, office sought, and party affiliation of each individual whom the person or committee is supporting or opposing for nomination or for election to any public office whatever or, if supporting the entire ticket of any party, the name of the party;

7. In the event the person or committee is promoting or opposing a referendum, the subject of the referendum, the date and location of the election, and a statement whether the person or committee is promoting or opposing the referendum question;

8. In the case of an inaugural fund committee, the name, address, and office to which elected of the person on whose behalf the committee is organized;

9. A statement whether the person or committee is a continuing one;

10. The disposition of residual funds which will be made in the event of dissolution;

11. A listing of all banks, safe-deposit boxes, or other repositories used; and

12. Such other information as shall be required by the State Board.

Any change in information previously submitted in a statement of organization shall be reported to the State Board within ten days following the change.

Any person or committee which, after having filed one or more statements of organization, disbands or determines it will no longer receive contributions or make expenditures during the calendar year in an aggregate amount exceeding $100 shall so notify the State Board. (1975, c. 515, § 24.1–254.1; 1983, c. 119; 1991, cc. 9, 709; 1993, c. 641.)

## APPENDIX 1(C)

**§ 24.2–910. Persons and political committees required to file disclosure reports.**—A. Any person or political committee required to file a statement of organization by § 24.2–908 shall be required to maintain records and file disclosure reports as provided in Article 4.

B. Any person or political committee making independent expenditures shall maintain records and report pursuant to Article 4 all contributions received and expenditures made of:

1. Any funds, in the aggregate, in excess of $500 for a statewide election or $100 for

any other election expended for the purpose of influencing the outcome of any election;

2. Any funds in any amount expended to publish or broadcast to the public any material referring to a candidate by name, description, or other reference and (i) advocating his election or defeat, (ii) setting forth his position on any public issue, voting record, or other official acts, or (iii) otherwise designed to influence individuals to cast their votes for or against him or to withhold their votes from him; and

3. Any funds in any amount expended to publish or broadcast to the public any material promoting or opposing a question submitted to the voters in a referendum. (1970, c. 462, § 24.1–255; 1975, c. 515; 1981, c. 425; 1983, c. 119; 1988, c. 616; 1991, c. 9; 1993, c. 641.)

### APPENDIX 1(D)

§ 24.2–1014. **Identifying persons responsible for campaign writing; penalties.**—A. As used in this section *"writing"* includes any printed or otherwise reproduced statement or advertisement, but shall not include editorial comment or news coverage which is sponsored and financed by the news medium publishing or broadcasting it nor writings authorized by the candidate on novelties including, but not limited to, pens, pencils, and buttons to be attached to wearing apparel.

B. It shall be unlawful for any person to cause any writing other than a television or radio broadcast to appear concerning any potential nominee or candidate, or concerning any question to be submitted to the voters unless such writing plainly identifies the person responsible for it. The writing shall carry the statement "authorized by" .............. and contain the following information to complete the statement:

1. The name of the candidate if the writing is authorized by the candidate or his campaign committee;

2. The name of the political party committee if the writing is authorized by that committee; or

3. If authorized by any person other than the candidate, his campaign committee, or a political party committee, either:

a. In the case of a committee that has filed a statement of organization under § 24.2–908, the full name of the committee and a registration number provided by the State Board, or

b. In any other case, the full name and residence address of the individual responsible for the writing.

C. It shall be unlawful for any person to use a false or fictitious name or address on any such writing described in subsection B.

D. It shall be unlawful for any person to cause any radio or television statement to appear unless the advertisement or statement contains information which plainly identifies the candidate, committee, or individual responsible for it.

E. Any person violating any provision of this section shall be subject to a civil penalty not to exceed fifty dollars; and, in the case of a willful violation, he shall be guilty of a Class 1 misdemeanor. The procedure to enforce the civil penalty provided in this section shall be as stated in § 24.2–929. The violation of this section shall not void any election. (Code 1950, § 24–456; 1956, c. 398; 1970, c. 462, § 24.1–277; 1972, c. 620; 1973, c. 30; 1975, c. 515; 1976, c. 616; 1981, c. 425; 1982, c. 650; 1991, c. 709; 1993, c. 641.)

**Cross references.**—As to punishment for misdemeanors for which no punishment is prescribed, see § 18.2–12. As to punishment for Class 1 misdemeanors, see § 18.2–11.

APPENDIX 2(A)

V I R G I N I A :

IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
John Marshall Courts Building

CHESTER A. ROBERTS,                          )
                                             )
              Plaintiff,                      )
                                             )
v.                                           )   DECREE
                                             )
VIRGINIA LEADERSHIP COUNCIL,                 )
and                                          )
KATHERINE DOSTER,                            )
                                             )
              Defendants.                     )

This cause came to be heard upon the prayer for a temporary injunction contained in plaintiff's bill of complalint and the affidavit of Susan Fitz-Hugh in support thereof, and was argued by counsel.

UPON CONSIDERATION WHEREOF, it appearing to the Court that plaintiff is entitled to the relief prayed for, it is hereby

ORDERED, ADJUDGED AND DECREED that defendant be and is hereby restrained and enjoined from distributing any literature of a political nature without first: ~(1) filing a statement of organization as required by §24.1-254.1 of the Code of Virginia and (2) identifying by name and address the person causing the literature to be distributed and including on any literature distributed the required authorization statement, as required by §24.1-277 of the

Code of Virginia.

This injunction order shall be effective from November 4, 1989, the date of this order, until November 11, 1989 or until such time as defendant complies with ~~§§ 24.1-254.1 and~~ 24.1-277 of the Code of Virginia, at which time it shall stand dissolved unless prior thereto it shall have been enlarged or a further injunction shall have been granted by further order of this Court.

Enter: 11 4 89

Judge

I ask for this:

p.q.

Seen and objected to:

A copy.
Testa: IVA n. PURDY, Clerk

by D.C.

APPENDIX 2(B)

V I R G I N I A:

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

DEMOCRATIC PARTY OF VIRGINIA
by Lawrence H. Framme, III
Plaintiff

v.

COMMITTEE FOR PROVIDING TRUTH
IN POLITICAL CANDIDATE POSITIONS

Robert Bidwell
6503 Bluebill Lane
Alexandria, Virginia

and

VIRGINIA LEADERSHIP COUNCIL

and

Katherine Doster
P.O. Box 13662
Richmond, Virginia 23223

CHANCERY NO. _____

## O R D E R

THIS CAUSE came on to be heard upon the Complaint for a permanent Injunction contained in Plaintiff's Bill of Complaint, the Affidavit of Susan Fitzhugh, Secretary of the State Board of Elections and upon the testimony of witnesses and was argued by Counsel, and the Plaintiff proffered to the Court efforts made to serve the Defendants and,

UPON CONSIDERATION of the pleadings and evidence, it appears that the Plaintiff is entitled to a Injunction, it is hereby,

ORDERED, ADJUDGED, and DECREED, that the Defendants are hereby enjoined and ordered to stop distribution of handbills or writings or any material referring to a candidate (by name, description, or other reference) advocating the election or defeat of such

Democratic Party of Virginia vs.
Committee for Providing Truth in Political
Candidates Positions, et. al.
Page Two of Three

candidate, setting forth the candidate's position on any public issue, his voting record, or other official acts or otherwise designed to influence individuals to cast their votes for or against such candidate or to withhold their votes from such candidate,... as described in Virginia Code 24.1-277, as amended; that the Committee for Providing Truth in Political Candidate Positions, its agents and assigns and Robert Bidwell from are enjoined from causing to be distributed and distributing "READ BEFORE YOU VOTE" and any other materials or publications or writings as defined in 24.1-277, Virginia Code and the Defendants Virginia Leadership Council, its agents and assigns and Katherine Doster are enjoined from causing to be distributed and from distributing "Leadership '89 Voter's Card (s)" and any other materials or publications or writings as defined in 24.1-277, Virginia Code effective immediately until further notice or until such time as the Defendants can demonstrate to the Court compliance with the law or until the injunction is dissolved by the Court or further injunction shall have been granted by the Court.

ENTERED THIS 6th DAY OF NOVEMBER, 1989.

_____
J U D G E

No bond required

Democratic Party of Virginia vs.
Committee for Providing Truth in Political
Candidates Positions, et. al.
Page Three of Three

WE ASK FOR THIS:

COHEN, DUNN & SINCLAIR, P.C.

GERALD BRUCE LEE
Counsel for Plaintiff
221 South Alfred Street
Alexandria, Virginia 22314
[703] 549-1172

GALEN BROOKS
Co-Counsel for Plaintiff
555 Grove Street Suite 120
Herndon, Virginia 22070
[703] 435-1133

SEEN AND OBJECTED TO:

VIRGINIA LEADERSHIP COUNCIL

KATHERINE DOSTER

COMMITTEE FOR PROVIDING
TRUTH IN POLITICAL
CANDIDATE POSITIONS

ROBERT BIDWELL

A COPY TESTE:
WARREN E. BARRY, CLERK
By:
Deputy Clerk

**1086**

VIRGINIA:

IN THE CIRCUIT COURT OF THE COUNTY OF FAIRFAX

| | |
|---|---|
| DEMOCRATIC PARTY OF VIRGINIA, ) | |
| ) | |
| MARK R. WARNER, CHAIR, et al. ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Chancery # 132062 |
| ) | |
| THE FAMILY FOUNDATION, a Virginia ) | |
|    corporation, et al. ) | |
| ) | |
|     Defendants. ) | |

### DECREE GRANTING TEMPORARY INJUNCTION

Plaintiffs moved for a temporary injunction and were heard on October 22, 1993; after considering evidence presented and arguments of Plaintiffs' counsel, the Court enjoined Defendants, The Family Foundation ("TFF") and Concerned Women for America of Virginia ("CWAV") to file statements of organization, required by VA Code § 24.1-254.1, with the State Board of Elections ("Board") no later than October 27, 1993; it further enjoined Defendants, their agents, representatives or associates from distributing any writing concerning any candidate for any office elective by the qualified voters, or concerning any question to be submitted to the electors, without first filing a statement of organization with the Board as required by VA Code § 24.1-254.1; it further enjoined Defendants, their agents, representatives or associates from distributing any writing concerning any candidate for any office elective by the qualified voters or any question to be submitted to the electors, unless such writing plainly identifies the person responsible therefor and carries the required

authorization language in compliance with VA Code § 24.1-277; it further stated that its order should be effective through October 27, 1993, on which day all Parties were to appear at 10:00 a.m. in Court for a hearing on the injunctions; it appearing to the Court that the Parties received notice of the hearing and were present with counsel; upon the evidence presented, considering applicable provisions of Virginia law, it is hereby

ORDERED, ADJUDGED, AND DECREED that Defendants TFF and CWAV shall file statements of organization, required by VA Code § 24.1-254.1, with the Board no later than November 6, 1993; it is further

ORDERED, ADJUDGED, AND DECREED that Defendants TFF and CWAV, their officers, agents, representatives, associates or anyone acting in concert with them are enjoined from distributing any writing (already printed or to be printed) about candidates for any office elective by the qualified voters, or concerning any question to be submitted to the electors, without first filing a statement of organization with the Board as required by VA Code § 24.1-254.1; it is further

ORDERED, ADJUDGED, AND DECREED that Defendants TFF and CWAV, their officers, agents, representatives, associates or anyone acting in concert with them are enjoined from distributing any writing (already printed or to be printed) about candidates for any office elective by the qualified voters or any question to be submitted to the electors, unless such writing plainly identifies the person responsible therefor and carries the legally required authorization statement and Board registration number to comply with VA Code § 24.1-277(B)(2)(a); it is further

1088

ORDERED, ADJULED, AND DECREED that each Defendants TFF and CWAV shall file with the Clerk of this Court and serve on plaintiffs' counsel, within 24 hours of receipt of actual notice of this Order, written statements setting forth in detail the manner in which each such Defendant has complied and will comply with this order; it is further

ORDERED, ADJUDGED, AND DECREED that continuation of this order is conditioned upon one or more of the Plaintiffs posting with the Clerk a bond in the amount of $5.00.

Entered this 27 day of October, 1993.

_____
J. HOWE BROWN, JUDGE

WE ASK FOR THIS:

_____
Jay B. Myerson, Esquire
11718 Bowling Green Drive
Reston, VA 22090
(703) 435-6391

_____
John Hardin Young, Esquire
State Party Counsel
Democratic Party of Virginia
5201 Leesburg Pike, Suite 1100
Falls Church, VA 22041
(703) 998-1100

_____
Michael Campilongo, Esquire
9315 Center Street, Suite 101
Manassas, VA 22110-5547
(703) 368-1165
Counsel for Plaintiffs

Defendants object on all grounds stated in their memorandum, including 1) they are not political committees under the Virginia state election code; the plaintiffs failed to demonstrate the elements necessary for the issuance of an injunction; the injunction injures the defendants far more than its dissolution would injure the plaintiffs; the as applied the statute is unconstitutionally overbroad, and the injunction is an unconstitutional prior restraint

COPY TESTE.
HN... OBJECTIONS Presented
Deputy Clerk

nal retained in the office a
lerk of the Circuit Court o

# VOTE TUESDAY

# November 7, 1989

Where do Virginia's
Candidates for Governor
Really Stand
on Abortion?

*Important Information Enclosed.*

# Virginia's Candidates for Governor
## Where Do They Really Stand on Abortion?

Marshall Coleman

Douglas Wilder

Marshall Coleman takes a strong stand against abortion on demand.

Marshall Coleman opposes using tax dollars to pay for abortions.

Marshall Coleman supports legislation:

- to prevent the use of abortion as a means of birth control, and to give fathers the legal right to be consulted and informed before the abortion of their unborn child. (93% of the abortions performed are for birth control.)
- to insure that women are given accurate information about the possible effects of abortion, the stage of development of their unborn child, and alternatives to abortion so that truly "informed consent" is given before an abortion is performed.
- to prevent sex selection abortions where a child is aborted because the opposite sex is preferred.

The Virginia Society for Human Life says: *"Marshall Coleman is a strong supporter of the right to life of unborn children."*

- Douglas Wilder supports the current Virginia abortion on demand policy which:
  - allows abortions for any reason
  - does not require that women be given adequate information about their unborn child, the possible effects of abortion and alternatives to abortion so that they can give truly informed consent before an abortion is performed.
  - does not require that the father be consulted or informed about the abortion of his unborn child.

### As a State Senator Douglas Wilder:

- Voted for Medicaid funding for abortion for virtually any reason. (1978, HB 502)
- Voted against an informed consent bill which would have provided women more information about the abortion procedure. (1979, SB 927)
- Voted to severely weaken a proposed parental consent bill. (1985, HB 1364)

- The Virginia Society for Human Life says: *"Douglas Wilder supports the present abortion on demand policy which has resulted in 34,000 abortions per year in Virginia."*

## Tuesday, November 7, 1989 is Election Day for Governor, Lieutenant Governor, Attorney General and Members of the Virginia House of Delegates.

WHERE DO CANDIDATES STAND ON ABORTION?

APPENDIX 3(B)

| | FOR GOVERNOR | | FOR LT. GOVERNOR | | FOR ATTORNEY GENERAL | |
|---|---|---|---|---|---|---|
| | GEORGE ALLEN | MARY SUE TERRY | MIKE FARRIS | DON BEYER | JIM GILMORE | BILL DOLAN |
| Takes stand against current abortion on demand law. | YES | NO | YES | NO | YES | NO |
| Supports law to require parents to be informed before daughters younger than 18 undergo abortions. | YES | NO | YES | NO | YES | NO |
| Supports "informed consent" law to ensure that prior to an abortion women are given accurate information about the possible effects of abortion, the stage of development of their unborn child, and alternatives to abortion. | YES | NO | YES | NO | YES | NO |
| Opposes using taxpayer money for abortion. | YES with exceptions | NO | YES | ? | YES | ? |

**Tuesday, November 2, 1993 is Election Day for Governor, Lieutenant Governor, Attorney General and Members of the Virginia House of Delegates.**