**VIRGINIA SOCIETY FOR HUMAN LIFE, INC. and Andrea Sexton, Plaintiffs,**

v.

**Donald S. CALDWELL, et al., Defendants.**

**Civil Action No. 95–1042–R.**

United States District Court, W.D. Virginia, Roanoke Division.

Sept. 24, 1998.

Donald Wise Huffman, Huffman & Haig, P.C., Roanoke, VA, James Bopp, Jr., Richard E. Coleson, Bopp, Coleson & Bostrom, Terre Haute, IN, for Plaintiffs.

Alice Ann Berkebile, James S. Gilmore, III, Lee Melchor Turlington, Office of the Attorney General, Richmond, VA, for Defendants.

### ORDER

WILSON, Chief Judge.

In accordance with the Memorandum Opinion filed today, it is hereby **ORDERED and ADJUDGED** that plaintiffs' motion for attorneys' fees and expenses is **DENIED.**

### MEMORANDUM OPINION

Plaintiffs, Virginia Society for Human Life (VSHL) and Sexton, moved for attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 (1994). VSHL and Sexton seek attorneys' fees arising out of a suit that this court dismissed for lack of standing. *See Virginia Soc'y for Human Life, Inc. v. Caldwell,* No. 95–1042–5, slip op. at 1 (W.D.Va. Feb. 19, 1997), *aff'd,* No. 97–1292, 152 F.3d 268, 269 (4th Cir.1998). Because this court finds that plaintiffs are not prevailing parties under § 1988, plaintiffs' motion for attorneys' fees is denied.

### I.

In 1995, plaintiffs, Virginia Society for Human Life (VSHL) and Andrea Sexton, brought a 42 U.S.C. § 1983 suit challenging the constitutionality of three sections of Virginia's Campaign Finance Disclosure Act, Va. Code Ann. §§ 24.2–908, 24.2–910, and 24.2–1014 (Michie 1995) (amended 1996 & 1997) (the "Sections"). VSHL and Sexton argued that the Sections were overly broad and chilled their free speech rights. The dispute arose because VSHL and Sexton wanted to distribute voter guides before the 1995 elections. These guides stated the views of candidates on selected issues but did not expressly advocate the election of a particular candidate. In 1989 and 1993, Virginia Circuit Courts had found similar voting guides unlawful and enjoined their distribution.

On October 30, 1995, this court granted VSHL and Sexton's motion for a preliminary injunction enjoining enforcement of the Sections. *See Virginia Soc'y for Human Life, Inc. v. Caldwell,* 906 F.Supp. 1071, 1074 (W.D.Va.1995). This court also found that the Sections would "arguably apply to VSHL and Sexton ... if not narrowed by construction." *Id.* at 1072. There was scant Virginia case law interpreting the Sections. To avoid "unnecessary constitutional adjudication and in the interest of federalism and comity" this court certified a question to the Supreme Court of Virginia regarding the construction of these laws. *Id.* The Virginia Supreme Court "rejected" the certified question without explanation. *See Virginia Soc'y for Human Life, Inc. v. Caldwell,* No. 95–2122 (Va.

Jan. 18, 1996). Four months later, the Virginia General Assembly amended the Sections.

Without guidance from the Virginia Supreme Court, this court interpreted the Sections. *See Caldwell,* No. 95–1042–R, slip op. at 1. To save the constitutionality of the Sections, this court construed them narrowly. This court found that under a narrow construction, the Sections only regulated guides that "expressly advocate the election or defeat" of a candidate. *Id.* at 3. Because VSHL and Sexton's guides involved issue advocacy, and not express candidate advocacy, this court found that the Sections did not apply to VSHL and Sexton. *See id.* Consequently, this court dismissed their case for lack of standing. *See id.* at 7.

VSHL and Sexton appealed the ruling. *See Caldwell,* 152 F.3d 268, 269. As a federal court interpreting state law, this court's interpretation of the Sections was not binding upon state courts. *See id.* 152 F.3d 268, 269. VSHL and Sexton argued that this court's opinion did not prevent a private party from suing to enjoin their distribution of campaign literature, and it did not prevent the state from prosecuting VSHL and Sexton for failing to comply with the Sections. *See id.* at 269. Thus, they argued, their speech was still chilled. *See id.*

The Fourth Circuit questioned this court's interpretation of the Sections. *See id.* at 270–271. Nevertheless, the Fourth Circuit certified the question regarding the interpretation of the Sections to the Virginia Supreme Court, giving that court "another chance [to] authoritatively ... interpret its laws so as to cure any constitutional infirmity." *See id.* at 271. This time the Virginia Supreme Court responded. In its answer, the Virginia Supreme Court interpreted the Sections narrowly, finding that the Virginia General Assembly limited their reach "so as to have no application to individuals or groups that engage solely in issue advocacy and that do not expressly advocate the election or defeat of a clearly identified candidate." *Id.* at 273 (quoting the response of the Virginia Supreme Court). The Virginia Supreme Court found that the provisions would apply only to groups such as VSHL if their activities "exceed the bounds of issue advocacy." *Id.* (quoting the response of the Virginia Supreme Court). Relying upon the Virginia Supreme Court's authoritative construction of the Sections, the Fourth Circuit found that the Sections did not reach groups such as VSHL, and it affirmed this court's dismissal of the case for lack of standing. *See id.* at 274.

## II.

VSHL and Sexton now seek $85,508.69 in attorneys' fees as prevailing parties under 42 U.S.C. § 1988. In a § 1983 action, the court "in its discretion, may allow the prevailing party ... a reasonably attorney's fee as part of the costs." 42 U.S.C. § 1988. The question in this case is whether VSHL and Sexton are prevailing parties. This case presents a curious scenario. Although VSHL and Sexton were granted a preliminary injunction, their case was ultimately dismissed. Plaintiffs' interpretation of the Sections has been rejected the by the Virginia Supreme Court in favor of the defendants'. Yet they have achieved a victory of sorts: the Virginia Supreme Court's interpretation of the Sections allows VSHL and Sexton to engage in issue advocacy without complying with Virginia's Campaign Financial Disclosure Act.

VSHL and Sexton argue that they are § 1988 prevailing parties under three different rationales. First, they are prevailing parties because the Virginia Supreme Court's answer removed the chilling effect on their free speech rights, providing them some benefit on a significant issues in the suit. Second, they are prevailing parties because their litigation was the catalyst that prompted both the Virginia General Assembly's amendment of the Sections and the Virginia Supreme Court's answer. Third, they are the prevailing party with regard to the preliminary injunction and are, at a minimum, entitled to attorneys' fees arising from that part of the litigation. The court will address VSHL and Sexton's three rationales separately.

## III.

VSHL and Sexton argue that prior to the Virginia Supreme Court's answer, they suffered from the chilling effect on their free speech rights caused by the Sections. *See Caldwell*, 152 F.3d 268, 269. They contend that the Virginia Supreme Court's authoritative construction eliminates this chilling effect. The Virginia Supreme Court's answer, they argue, gives them "some of the benefit the parties sought in bringing the suit" on a "significant issue" in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), *quoted in* (Mem. Supp. Pls.' Second Supp.Mot. Attys' Fees & Expenses at 11).

In *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the United States Supreme Court clarified how a plaintiff becomes a § 1988 "prevailing party." The Court stated: "to qualify as a prevailing party ... [t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Id.* at 111, 113 S.Ct. 566 (internal citations omitted). A plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12, 113 S.Ct. 566. VSHL and Sexton are not prevailing parties because the dismissal of their case, even

when combined with the Virginia Supreme Court's answer, did not give them the right to enforce a judgment, consent decree, or settlement against the defendants.

The Virginia Supreme Court's answer has clarified the law, but it did not provide VSHL and Sexton with an enforceable judgement, settlement, or consent degree—a fundamental requirement of a "prevailing party." *See Farrar*, 506 U.S. at 111, 113 S.Ct. 566; *S–1 & S–2 v. State Bd. of Educ.*, 6 F.3d 160, 170 (4th Cir.1993) (Wilkinson, J., dissenting) (describing judgments, consent decrees, and settlement agreements "as the exclusive avenues to prevailing party status"), *rev'd per curiam*, 21 F.3d 49, 51 (4th Cir.1994) (en banc) (adopting as its own Judge Wilkinson's dissent).[1] Indeed, this court has dismissed the case against the defendants because VSHL and Sexton lack standing.[2] All that VSHL and Sexton have at the end of the day is an answer to a certified question by the Virginia Supreme Court. Although this answer may accord with VSHL and Sexton's interests, *see Caldwell*, 152 F.3d 268, 274, it is not an enforceable judgment, consent degree, or settlement against the defendants. At best, the Virginia Supreme Court's answer is a "judicial pronouncement." *Farrar*, 506 U.S. at 112, 113 S.Ct. 566. As the U.S. Supreme Court observed in *Farrar*, a judicial pronouncement without an enforceable judgment will not make a plaintiff a prevailing party. *See id.* at 111–12, 113 S.Ct. 566 ("[A] judicial pronouncement that the defendant

---

**1.** Plaintiffs look for support in the Eleventh Circuit statement in *Church of Scientology Flag Serv., Org., Inc. v. City of Clearwater*, 2 F.3d 1509 (11th Cir.1993): "Even if the challenged provision is clarified against the plaintiff's interests, he has succeeded in materially altering the legal relationship in manner that confers some benefit, namely, the certainty of clearly stated legal norms that bind him." *Id.* at 1514, *quoted in* (Mem.Supp. Pls.' Second Mot. Attys' Fees & Expenses at 11). The plaintiff in *Church of Scientology* sought attorneys' fees because its suit caused the City of Clearwater to amend a city ordinance. *See id.* at 1513. The case was premised on the "catalyst theory," which has been repudiated by the Fourth Circuit. *See S–1 and S–2*, 21 F.3d at 51; *infra Section IV*. Indeed, the Eleventh Circuit's statement in *Church of Scientology* demonstrates the pitfalls of the catalyst theory. By granting recovery based only on the "certainty of clearly stated legal norms," *Church*

*of Scientology*, 2 F.3d at 1514, the theory allows for recovery when there has been no "enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent degree or settlement." *Farrar*, 506 U.S. at 111, 113 S.Ct. 566 (internal citations omitted). Because *Church of Scientology* is inconsistent with Fourth Circuit and Supreme Court precedent, it provides no aid to VSHL and Sexton.

**2.** The Fourth Circuit observed in *Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir.1998), that a plaintiff who lacks standing is prevented from attaining prevailing party status. *See id.* at 167 (awarding attorneys' fees to plaintiff-intervenors without standing only because other plaintiffs in the suit had standing). As the court in *Shaw* stated: "a plaintiff without standing will not be able to recover fees ... because the possession of Article III standing is interwoven into the very concept of plaintiff status." *Id.* at 165.

has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party. Of itself, 'the moral satisfaction [that] results from any favorable statement of law' cannot bestow prevailing party status." (quoting *Hewitt v. Helms*, 482 U.S. 755, 762, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987))). Regardless of how pleased VSHL and Sexton are by the Virginia Supreme Court's judicial pronouncement, it cannot turn them into prevailing parties. *Cf. American Booksellers Ass'n, Inc. v. Commonwealth*, 882 F.2d 125, 128 (affirming district court's denial of attorneys' fees for the plaintiff after a Virginia Supreme Court's certified answer held that plaintiff's activities were not covered by Virginia's pornography laws).

## IV.

VSHL and Sexton also argue that they are prevailing parties under the "catalyst theory" because their case prompted the Virginia General Assembly to amend the Sections or, alternatively, the case caused the Virginia Supreme Court to authoritatively interpret the Sections. Under the "catalyst theory" a plaintiff is a prevailing party if he can "prove that the existence of the lawsuit accomplished the original objectives of the lawsuit without a formal judgment." *Baumgartner v. Harrisburg Hous. Auth.*, 21 F.3d 541, 544 (3d Cir.1994). The Fourth Circuit, however, has rejected the "catalyst theory." *See Arvinger v. Mayor & City Council*, 31 F.3d 196, 202 (4th Cir.1994); *S–1 and S–2*, 21 F.3d 49 at 51. The Fourth Circuit repudiated the theory because it conflicts with both the plain language of § 1988 and the U.S. Supreme Court's opinion in *Farrar*. *See S–1 and S–2*, 6 F.3d at 170–72. Although other circuits have decided to retain the theory even after *Farrar*, *see, e.g., Baumgartner*, 21 F.3d at 546, VSHL and Sexton cannot use the catalyst theory to become prevailing parties in this circuit.

## V.

Finally, VSHL and Sexton argue that they are prevailing parties with regard to the preliminary injunction. Specifically, they argue that the preliminary injunction was a "merit-based determination" that materially altered the legal relationship between the parties. (Pls.' Reply Defs.' Objections & Mem.Opp. Pls.' Mot. Attys' Fees & Expenses at 9.) Yet the preliminary injunction issued in this case was not a final determination by the court vindicating their claim. *See Smith v. University of North Carolina*, 632 F.2d 316, 346–49 (4th Cir.1980); *Rahim X v. Morris*, No. Civ.A. 96–0493–R, 1997 WL 687729, at *1–*3 (W.D.Va. Oct.27, 1997). A preliminary injunction is only a "prognosis of probable or possible success" and is not the sort of "final disposition" required to become a prevailing party. *Smith*, 632 F.2d at 346–49. The injunction granted by this court merely enjoined the enforcement of §§ 24.2–908 and 24.2–910, as applied to the plaintiffs, and § 24.2–1014(B)(3)(b), as applied to all persons. *See Caldwell*, 906 F.Supp. at 1077. The injunction was not a "final disposition" of the case. *Smith*, 632 F.2d at 349. The final disposition in this case was a dismissal for lack of standing. *See Caldwell*, 152 F.3d 268, 274. The Fourth Circuit has held that attorneys' fees are not warranted when a party receives a preliminary injunction and the issue is unfavorably resolved or mooted. *See Smith*, 632 F.2d at 346–52 (finding that plaintiff was not a prevailing party where she obtained a preliminary injunction but did not ultimately prevail on the merits); *cf. S–1 and S–2*, 21 F.3d at 50–52 (finding that summary judgment was not sufficient to turn a plaintiff into a prevailing party when the court ultimately dismissed the complaint as moot). VSHL and Sexton are not prevailing parties with respect to the preliminary injunction.[3]

## VI.

Because the plaintiffs never attained prevailing party status under § 1988, their motion of for attorneys' fees will be denied.

---

3. Because the court finds that the preliminary injunction did not make VSHL and Sexton prevailing parties, the court does not reach defendants' contention that plaintiffs' motion for attorneys' fees was untimely.