**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VERN T. JORDAHL; MARY-BETH
LAROCK; VIRGINIA LEADERSHIP
COUNCIL,
Plaintiffs-Appellants,

v.

DEMOCRATIC PARTY OF VIRGINIA;
RICHMOND CITY DEMOCRATIC
COMMITTEE,

No. 96-2402

Defendants-Appellees,

COMMONWEALTH OF VIRGINIA,
Intervenor-Appellee,

and

MARK R. WARNER; PIXIE BELL;
LAWRENCE H. FRAMME, III; CHESTER
A. ROBERTS; JOHN DOES,
Defendants.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-95-1043-R)

Argued: June 4, 1997

Decided: July 28, 1997

Before WIDENER and MURNAGHAN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion, in which Judge Widener and Senior Judge Phillips joined.

_____

## COUNSEL

**ARGUED:** M. Miller Baker, CARR, GOODSON, LEE & WAR-NER, Washington, D.C., for Appellants. Monica Leigh Taylor, GEN-TRY, LOCKE, RAKES & MOORE, Roanoke, Virginia; John Hardin Young, Falls Church, Virginia, for Appellees. Alice Ann Berkebile, Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-ERAL, Richmond, Virginia, for Intervenor. **ON BRIEF:** Brian M. Tauscher, Matthew J. Cuccias, Steven F. Gatti, CARR, GOODSON, LEE & WARNER, Washington, D.C.; James Bopp, Jr., BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellants. Leisa Kube Ciaffone, GENTRY, LOCKE, RAKES & MOORE, Roa-noke, Virginia; R. Claire Guthrie, Richmond, Virginia, for Appellees. James S. Gilmore, III, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Intervenor.

_____

## OPINION

MURNAGHAN, Circuit Judge:

In 1989 and again in 1993, the Virginia Leadership Council, Vern T. Jordahl, a member of the Virginia Leadership Council, and Mary-Beth LaRock, a member of the Concerned Women for America, pre-pared and sought to distribute voter guides comparing the political positions of the various candidates for the offices of Governor, Lieu-tenant Governor, Attorney General and General Assembly members. The voter guides did not endorse any candidate for a particular office. In both instances, the Democratic Party of Virginia sought and obtained three injunctions forbidding the plaintiffs from distributing the guides.

Thereafter, the plaintiffs sued the Democratic Party of Virginia for allegedly using state statutes and judicial proceedings to suppress political speech in violation of the First Amendment. The district

2

court granted the Democratic Party's motion to dismiss on the grounds that the district court lacked subject matter jurisdiction over the matter. See Jordahl v. Democratic Party of Virginia, 947 F.Supp. 236 (W.D. Va. 1996). For the reasons that follow, we affirm.

I.

FACTS AND PROCEDURAL HISTORY

The instant case centers upon three injunctions issued by the Virginia state courts. On November 7, 1989, the Commonwealth of Virginia held regularly scheduled elections for Governor, Lieutenant Governor, Attorney General, and Delegates to the General Assembly. Prior to the election, the Virginia Leadership Council (VLC) and Vern Jordahl (Jordahl), a member of the VLC, prepared over one million voter guides for distribution comparing the policy positions of the various candidates for office. The voter guides did not endorse any of the candidates.

1989 Richmond Injunction

On November 4, 1989, however, the Democratic Party of Virginia (DPV) filed a Bill of Complaint in the Richmond City Circuit Court alleging that the VLC and others were violating the Virginia Fair Elections Practices Act (VFEPA), Va. Code Ann. § 24.1-251 et seq., repealed December 1, 1993.**1** On November 6, 1989, one day before the election, the Richmond Circuit court entered an order enjoining the VLC from distributing political literature "without first identifying ... the person causing the literature to be distributed and including on any literature distributed the required authorization statement as required by § 24.1-277 of the Code of Virginia." The Order provided that the injunction automatically expired on November 11, 1989, or upon compliance by the VLC with the statute. Subsequently, on Octo-

_____

**1** Specifically, the DPV alleged that the VLC failed to comply with the requirement that political committees file a statement of organization and periodic reports of contributions and expenditures. In addition, the DPV alleged that the VLC was distributing campaign literature that did not include identifying information, as is required by the VFEPA.

ber 11, 1994, the Richmond action was dismissed for failure to prosecute.

1989 Fairfax Injunction

On November 4, 1989, the DPV also filed suit in the Circuit Court for Fairfax County against the VLC and others, alleging that the "Read Before You Vote" pamphlet[2] and certain "Voter Cards" were being distributed in violation of the VFEPA. As its counterpart in Richmond had, the Fairfax court entered an order enjoining the VLC from distributing the "Read Before You Vote" pamphlet and "Voter Cards" until an expedited hearing on November 6, 1989, or the VLC could demonstrate its compliance with the VFEPA. Following the hearing on November 6, 1989, the Fairfax court entered an order permanently enjoining the VLC from distributing either the pamphlet or voter guides. On September 30, 1994, by stipulation of the parties, the Fairfax court entered an order dismissing the claims against the VLC as moot and dissolving the injunction with respect to the VLC and Jordahl.

1993 Fairfax Injunction

On November 2, 1993, the Commonwealth of Virginia held regularly scheduled elections for Governor, Lieutenant Governor, Attorney General, and Delegates to the General Assembly. Prior to the election, Mary-Beth LaRock (LaRock), a state representative for Concerned Women for America (CWA) prepared voters guides outlining the various candidates' positions in the upcoming election. The voter guides did not endorse any candidate. LaRock prepared over one million of these guides and was in the process of distributing the guides when the DPV filed suit in Fairfax County Circuit Court.

Again, the DPV alleged that LaRock and others were violating the VFEPA and sought an injunction. After initially entering a temporary restraining order, the Fairfax Court entered an order permanently enjoining LaRock and others "from distributing any writing ... about candidates for any [elective] office ... without first filing a statement

_____

[2] The pamphlet urged voters to "cast your vote against candidate [Linda T. "Toddy"] Puller" if "you disagree with any of these questions."

4

of organization with the [Virginia State] Board [of Elections]" and identifying on the writing "the person responsible therefor" and the registration number.

Following the Fairfax Court's action, LaRock and others filed suit against the Fairfax Court judge in the United States District Court for the Eastern District of Virginia. The district court dismissed the suit on the authority of Younger v. Harris, 401 U.S. 37 (1971). See Family Found., Inc., et al. v. J. Howe Brown, etc., No. CA 93-1339A (E.D. Va. Oct. 29, 1993). The Fourth Circuit affirmed the district court denying LaRock and others' request for an emergency stay. See Family Found., Inc. v. Brown, 9 F.3d 1075 (4th Cir. 1993). The Virginia Supreme Court dissolved the Fairfax court's injunction on November 1, 1993, without opinion. Thereafter, LaRock voluntarily dismissed her appeal to this court as moot. On February 7, 1994, over the objections of LaRock and others, the DPV nonsuited the 1993 Fairfax action. On April 8, 1994, the Fairfax Court vacated the order of nonsuit and dismissed the case without prejudice.

Virginia Statutes

On December 1, 1993, by a prior act of the Virginia General Assembly, the VFEPA was repealed and replaced by the Virginia Campaign Finance Disclosure Act (VCFDA), Va. Code Ann. § 24.2-900 et seq. (Michie 1993 & Supp. 1996). In 1996, the General Assembly enacted further amendments to the VCFDA, which became effective on July 1, 1996. See Act of May 6, 1996, ch. 1042 (further amending Va. Code Ann. §§ 24.2-901, 24.2-908, 24.2-910, and 24.2-1014). Specifically, the following relevant changes were made. First, in 1993, the term "political committee" was redefined to exclude 501(c)(3) corporations. See Va. Code Ann.§ 24.1-254.1 and Va. Code Ann. § 24.2-901. Second, the 1996 amendments to § 24.2-1014(B) of the VCFDA added the term "clearly identified candidate" and deleted the term "potential nominee."

On October 2, 1995, the VLC filed the instant action against the DPV and other individuals, seeking compensatory and punitive damages, and injunctive and declaratory relief. The district court scheduled a hearing on plaintiffs' motion for a preliminary injunction together with a hearing for a preliminary injunction request in a

5

related case.**3** At the combined hearing, the district court announced that it would refrain from ruling on the motions while the parties sought dissolution of the 1989 Fairfax Court injunction which remained in effect.**4** The Fairfax Court dissolved its injunction on March 21, 1996 with respect to the remaining parties.

On February 21, 1996, the VLC filed a nine-count First Amended Complaint against the DPV, seeking compensatory and punitive damages, and declaratory and injunctive relief. Counts One, Two, Three, Seven, and Eight, were brought under 42 U.S.C. § 1983. Count One alleged that various provisions of the VCFDA, in connection with Va. Code Ann. § 8.01-620 (1992 & Supp. 1996), authorizing circuit courts to grant injunctive relief, constituted a system of prior restraint in violation of the First and Fourteenth Amendments to the United States Constitution. Counts Two, Three, Seven, and Eight are § 1983 claims for injuries caused by the two 1989 and one 1993 injunctions entered by the Richmond and Fairfax state courts. Counts Four (abuse of process), Five (abuse of process), Six (malicious prosecution), and Nine (trespass to chattels) are state law claims for injuries allegedly caused by the issuance of those same injunctions.

On March 16, 1996, the DPV filed a motion to dismiss the VLC's complaint alleging, <u>inter alia</u>, that the district court lacked subject matter jurisdiction. On June 7, 1996, the VLC filed a motion for partial summary judgment as to the federal allegations contained in Counts One, Two, and Seven and as to the state allegations in Count Nine of the complaint. On July 26, 1996, the Commonwealth of Virginia filed a motion to intervene because the VLC's complaint called into question the constitutionality of Va. Code Ann.§§ 24.2-908, 24.2-910, and 24.2-1014. The district court granted the Commonwealth's motion.

_____

**3** The related case, <u>Virginia Society for Human Life v. Caldwell</u>, 906 F.Supp. 1071 (W.D. Va. 1995), challenged the constitutionality of §§ 24.2-908, 24.2-910, and 24.2-1014 of the VCFDA.

**4** While the injunction had been dissolved against the VLC and Jordahl, the injunction still remained in effect with respect to other parties who are not parties to the instant litigation.

On September 30, 1996, the district court granted the DPV's motion to dismiss on the grounds that the district court lacked subject matter jurisdiction because Count One did not present an actionable case or controversy and Counts Two, Three, Seven, and Eight, the other § 1983 claims were barred under the <u>Rooker-Feldman</u> doctrine.[5] Thereafter, the district court declined to exercise supplemental jurisdiction over the remaining state law claims. The district court dismissed the action without addressing the VLC's pending motion for partial summary judgment. The VLC now appeals.

II.

DISCUSSION

Principally, the VLC challenges the district court's dismissal of its complaint on the grounds that the district court lacked subject matter jurisdiction over the complaint and the district court's failure to assert supplemental jurisdiction over the remaining state law claims. The district court's dismissal of a complaint for lack of subject matter jurisdiction is reviewed <u>de novo</u>. <u>Tillman v. Resolution Trust Corp.</u>, 37 F.3d 1032, 1034 (4th Cir. 1994). The district court's dismissal of the state law claims under 28 U.S.C. § 1367 is reviewed for abuse of discretion. <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir. 1995).

A. <u>Count One -- Lack of Actionable Case or Controversy</u>

The district court dismissed Count One on the basis that no justiciable case or controversy existed. The district court stated that "[c]ount One mounts no facial challenge; rather, it claims that the statutes <u>as applied</u> constitute a system of prior restraint." <u>Jordahl v. Democratic Party of Virginia</u>, 947 F.Supp. 236, 239 (W.D. Va. 1996) (italics in original). The district court noted that in 1996 the Virginia

_____

[5] The <u>Rooker-Feldman</u> doctrine derives its name from <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983), and <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923). At the motions hearing, the district court appropriately <u>sua sponte</u> raised the <u>Rooker-Feldman</u> issue, and received supplemental briefing from the parties on that issue. <u>See Moccio v. New York State Office of Court Admin.</u>, 95 F.3d 195, 1988 (2d Cir. 1996); <u>Garry v. Geils</u>, 82 F.3d 1362, 1367-68 (7th Cir. 1996).

General Assembly amended the statutes that formed the basis for VLC's challenge. As such the district court reasoned that "[a] challenge based on the statutes in effect at the time of plaintiffs' alleged injury would be moot because those statutes no longer exist in the same form, and a challenge based on the current statutes is premature because they have not yet been applied." Id.  The district court, relying on Renne v. Geary, 501 U.S. 312, 320 (1991), noted that the VLC presently suffers no "actual or threatened application" of the amended statutes. Id.

Moreover, the district court reasoned that sustaining the VLC's present challenge to as yet not applied amended statutes "assumes that Virginia courts will apply the recently enacted amended statutes in a way that violates the Constitution...", id.  at 239-240, an assumption the district court noted that "offends basic tenets of federalism." Id. at 240. The court then dismissed Count One.

VLC's primary disagreement with the district court is the district court characterization of its claim as stating only an "as applied" challenge rather than both an "as applied" and a facial challenge to the constitutionality of the Virginia statutes. As for the "as applied" challenge, the VLC argues that the Virginia Assembly's actions in 1993 and 1996 amending the statutes at issue were non-material changes that did not materially alter the law. The VLC maintains that "[n]either the 1993 recodification, nor the 1996 amendments to the VCFDA prevents the DPV ... from again enforcing Va. Code [Ann.] §§ 24.2-908, 24.2-910 and 24.2-1014 by injunctions pursuant to Va. Code [Ann.] § 8-01-620 to prevent the VLC from distributing its voter guides in the 1997 and later elections." On the facial challenge front, the VLC contends that because in Count One it alleged that the challenged provisions of the VCFDA always violate the First Amendment, Count One alleges a facial challenge as well.

The VLC's argument is not persuasive. First, the statutes have been amended and, as the district court noted, the statutes which the VLC challenged are no longer the statutes in effect in Virginia. During the course of the struggle between the VLC and the DPV, the Virginia Assembly has twice amended the challenged statutes. In fact, in 1993, the statute challenged in the instant case was repealed altogether. Furthermore, the Virginia General Assembly further amended the new

8

statute, the VCFDA, in 1996 in response to the Supreme Court's decision in McIntyre v. Ohio Elections Comm'n, 115 S.Ct. 1511 (1995).

In Maryland Highways Contractors Ass'n v. State of Md., 933 F.2d 1246 (4th Cir.), cert. denied, 502 U.S. 939 (1991), this court stated that an action is moot when it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." Id . at 1249 (quoting Diffenderfer v. Central Baptist Church, 404 U.S. 412, 414 (1969)). As noted above, since the statutes have been amended, no present, live controversy exists. Thus, the district court correctly concluded that an "as applied" challenge to the pre-amended statutes is moot. See Renne v. Geary, 510 U.S. 312, 320 (1991) (holding that respondents have "failed to demonstrate a live dispute involving the actual or threatened application of [state statute] to bar particular speech."); Woodall v. Reno, 47 F.3d 656, 658 (4th Cir.) (dismissing case as moot because "no factual record of an actual or threatened application of the [Act's] injunctive relief provisions" existed and court would not "assume that a court would issue an injunction in violation of the well-established prior restraint doctrine"), cert. denied, 115 S.Ct. 2577 (1995).

Moreover, as the district court noted an "as applied" challenge with respect to the newly amended statutes is premature. The VLC contends that the case is ripe because the DPV has not disclaimed its ability to seek to enforce the newly amended Virginia statutes against the VLC in the future. The VLC's argument is a nonstarter. The VLC is not presently subject to any injunction enforcing the VCFDA. M. Sue Wrenn Affidavit at ¶ 3. Nor has the VLC shown that the organization will be subject to injunctive relief issued against it during the fall 1997 general election. Rather, all the VLC can demonstrate is that in 1989 and 1993, under the VFEPA, the DPV successfully enjoined the VLC from distributing voter guides and other pamphlets in violation of the VFEPA. No evidence exists that the VLC is currently under an actual or threatened application of the new VCFDA.

In Renne, the Supreme Court noted that "past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." Renne, 501 U.S. at 321. The instant case is even stronger. Here, the VLC can not even demonstrate that the DPV

9

engaged in illegal conduct, especially since the DPV was able to persuade Virginia state courts on three occasions to issue injunctions against the VLC for violations of the VFEPA. Moreover, all of the "harms" which the VLC alleges were suffered by it are stated in the past tense and relate to the VFEPA, a statute which is no longer in effect. The 1989 and 1993 injunctions which formed the basis for this action have been dissolved, vacated, or dismissed. No action has been taken by the DPV to enforce the new VCFDA. Thus, no actual or threatened harm exists, and the district court correctly dismissed Count One on lack of ripeness grounds. See Woodall, 47 F.3d at 658 (action should be deferred until a "clean-cut and concrete" controversy exists).

Finally, we turn to the VLC's attempt to transform its "as applied" challenge into a facial challenge. A review of the VLC's First Amended Complaint and the relief sought demonstrates that the present action is properly characterized as an "as applied" challenge to the now repealed VEFPA. The VLC makes no assertion, nor demand that the now repealed VEFPA is unconstitutional and should be declared such. Rather, the VLC's demand states that "when enforced ... by injunctions that restrain speech," the VEFPA, in combination with the general statute authorizing private parties to seek injunctive relief, constitutes an unconstitutional "system of prior restraints." Thus, VLC's own characterization of its claim demonstrates its attack involved only an "as applied" challenge.[6] Accordingly, the district court should be affirmed.[7]

_____

[6] Moreover, the DPV would not be the proper party to a valid facial challenge, the Commonwealth of Virginia would. Thus, the VLC has sued the wrong party, even if VLC had alleged a facial challenge to the VEFPA.

[7] As an aside, we note that in a case related to the present one, Virginia Society for Human Life, Inc. v. Caldwell, 906 F.Supp. 1071 (W.D. Va. 1995), the same district judge preliminarily enjoined the same challenged provisions on the grounds that "the challenged provisions arguably apply to [plaintiffs] and have a chilling effect on their freedom of speech." Id. at 1072. In the interest of federalism and comity, the district court submitted the issues of state statutory construction of those challenged provisions to the Virginia Supreme Court, and entered a preliminary injunction. Thus, the Caldwell case demonstrates that a facial challenge may be brought against the challenged provisions, and perhaps, a facial challenge may be successful. As noted above, however, unlike the plaintiffs in Caldwell who brought a facial challenge to the statute arguing that the challenged provisions were overbroad, the VLC has not done so in the instant case.

10

B. Rooker-Feldman Doctrine

The district court dismissed Counts Two, Three, Seven, and Eight for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. The doctrine prohibits the United States District Courts, with the exception of habeas corpus actions, from "sit[ting] in direct review of state court decisions." Feldman, 460 U.S. at 483 n.16. The Rooker-Feldman doctrine only applies to "adjudications" not "legislative acts." Feldman, 460 U.S. at 479. The Court has explained that adjudications involve application of existing laws to the facts of a particular case, while legislative acts "[look] to the future and [change] existing conditions by making a new rule to be applied thereafter to all or some part of those subject to [their] power[s]." Id. at 477.

The doctrine extends not only to constitutional claims presented or adjudicated by the state courts but also to claims that are "inextricably intertwined" with a state court judgment. Feldman, 460 U.S. at 486-87; Leonard v. Suthard, 927 F.2d 168, 169-70 (4th Cir. 1991). Furthermore, the Rooker-Feldman doctrine precludes not only review of adjudications of the state's highest court, but also the decisions of its lower courts. See Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. and N.J. Police Dep't, 973 F.2d 169, 177 (3d Cir. 1992). With these principles in mind, we now address the VLC's claim that the Rooker-Feldman doctrine does not pose a bar to its § 1983 claims.

In the instant case, the district court concluded that the Rooker-Feldman doctrine barred the court's consideration of the VLC's § 1983 claims. The district court stated that the "key issue is whether the injuries alleged by the federal plaintiffs resulted from state court judgments or whether they are independent claims." The district court concluded that:

> In this case, plaintiffs claim they were injured as a result of state court injunctions - injuries caused not by the defendants but by the actions of state courts. While the plaintiffs complain that the defendants sought the injunctions against them, the alleged injury occurred only when the state court granted the injunctions. Thus, the plaintiffs are essentially claiming injury at the hands of the state court. Under

11

> Rooker-Feldman, a federal district court may not entertain such a suit.

Jordahl, 947 F.Supp. at 240.

The district court then addressed the VLC's argument that because the Virginia courts eventually dissolved the injunctions, no outstanding judgments subject to attack remained, and thus, the Rooker-Feldman doctrine does not operate as a bar to the district court's consideration of the § 1983 claims. In ascertaining whether the Rooker-Feldman doctrine applied the district court stated that it must determine "whether the litigant challenges the underlying procedure as unconstitutional or instead seeks review of the state court judgment in his case." Jordahl, 947 F.Supp. at 240-42. Relying principally upon Young v. Murphy, 90 F.3d 1225 (7th Cir. 1996), the district court concluded that the doctrine barred the court's consideration of the VLC's claims.

In Young, plaintiff brought a § 1983 action against government officials, alleging various civil rights violations arising out of a competency hearing involving John Wellman, an elderly friend of the plaintiff's. After Wellman, a wealthy client, attempted to transfer his assets to plaintiff, his attorney,[8] state officials moved to declare Wellman incompetent. An Illinois circuit court granted the motion and appointed a guardian for Wellman. Ultimately, plaintiff succeeded in reversing the circuit court's judgment and having Wellman declared competent.

After Wellman died, plaintiff, as executor of the estate, filed a federal civil rights suit on behalf of his deceased client against the public officials involved in the original competency hearing. The district court dismissed part of the suit for failure to state a claim. On appeal, the Seventh Circuit affirmed the district court's dismissal and also remanded with instructions to dismiss the remainder of the complaint on the grounds that the Rooker-Feldman doctrine divested the district court of subject matter jurisdiction over the complaint.

_____

**8** Wellman did not have any family or other friends.

12

In so holding, the circuit court, cited with approval by the district court in the instant case, stated:

> [c]ases dealing with Rooker-Feldman generally address instances where the underlying harm alleged in the complaint has gone unrectified. In this case we are presented with a situation where [plaintiff] has already rectified the consequences of the allegedly unconstitutional state proceedings through the fully litigated restoration of Wellman to full competency in state court. Therefore [plaintiff] would suggest that this suit is neither an appeal of, nor a collateral attack upon, the earlier incompetency proceeding. But attacking the effects of that judgment is exactly what he is doing. Wellman's injury resulted from the state court judgment of incompetency and not from the alleged denial of due process. Had he prevailed in the [earlier] hearing ... he would have had no injury and no constitutional claim to bring before the district court. Thus, [plaintiff] is really claiming Wellman's injury resulted from the state court judgment rather than the due process afforded by Illinois probate courts.

Young, 90 F.3d at 1231.

Based on the Young case, the district court concluded that the VLC is attacking the effects of the initial state court judgments, and not any independent action by the DPV. Thus, the court held that since the VLC's claimed injury "stems from the state court judgment", the court lacked subject matter jurisdiction over the claims.[9] Jordahl, 947 F.Supp. at 241.

_____

[9] The district court also rejected the VLC's argument that the injunctions were "legislative acts" rather than adjudications. The district court noted that "in this case, the Virginia state courts granted the injunctions because those courts determined that the [VLC's] actions violated existing laws. An injunction under these circumstances must be considered an adjudication for purposes of Rooker-Feldman." Jordahl, 947 F.Supp. at 241 (italics in original).

13

The VLC challenges the district court's application of the Rooker-Feldman doctrine. The VLC argues that the Rooker-Feldman doctrine is inapplicable for a number of reasons: (1) the state court's decisions were not adjudications, but rather, legislative acts; (2) the state court's injunctions have been dissolved, thus no outstanding judgments or injunctions against VLC remain in effect; and (3) the doctrine does bar collateral attacks on ex parte state court orders.

1. Legislative vs. Adjudications

Principally, the VLC argues that the "sweeping and breathtakingly overbroad injunctions in the underlying actions ... looked to the future and changed existing conditions by forbidding VLC's future speech and the future speech of non parties ...." The VLC's contention must fail.

Unquestionably, the state court proceedings required the state court to engage in a judicial inquiry into the DPV's claims of the VLC's alleged violation of Virginia's campaign statutes. Moreover, a judicial act was necessitated to declare and enforce those rights. The injunctions were "judicial" in nature because the injunctions required the VLC's immediate compliance with existing Virginia law. As for the VLC's future argument, the injunctions only remained in effect so long as the VLC did not comply with the existing law. The state court did not change or create new law. Rather, the state court was required to decide whether existing law had been violated. Thus, the state court's proceedings were "adjudications."

The VLC cites to a few cases which indicate that the issuance of injunctions may be legislative acts. See, e.g., Hoover v. Wagner, 47 F.3d 845, 849 (7th Cir. 1995) (noting, without deciding the issue, that "[i]njunctions often do function like statutes."); Cheffer v. McGregor, 6 F.3d 705, 708 (11th Cir. 1993), vacated on other grounds, 41 F.3d 1421 (11th Cir. 1994) (en banc) (finding state court injunction to be statutory in character); Henson v. East Lincoln Twp., 814 F.2d 410, 416 (7th Cir. 1987) (injunction that corresponds to state statute for bringing about general compliance with the law is"legislative"), cert. dismissed, 506 U.S. 1042 (1993).

Arguably, the VLC's strongest case is Cheffer , but that case provides little guidance for resolution of the present case. Cheffer

14

involved an injunction prohibiting "pro-life" speech activities in a certain geographic area. As the court noted, the injunction had the "unusual characteristic" of extending to non-parties and imposing criminal penalties to otherwise constitutional activity. Cheffer, 6 F.3d at 708. In fact, the court stated that the injunction "has all the attributes of a criminal statute." Id.

Cheffer does not assist the VLC for two primary reasons. First, the injunctions at issue in the instant case did not apply to non-parties as the VLC argues. While the injunction issued by the Fairfax court enjoined the VLC and "their officers, agents, representatives, associates, or anyone acting in concert with them...", the injunction included only those persons who would be acting under the direction of the VLC. Second, and more importantly, the Cheffer analysis did not arise within the Rooker-Feldman context. Thus, the state court injunctions are adjudications and the Rooker-Feldman doctrine bars the district court's consideration of the claims.

2. Dissolution of State Court Injunctions

Secondarily, the VLC argues that "[o]nce a judgment or order has been `reversed or modified' in the state court system, it is no longer an `effective and conclusive adjudication', thus nothing exists for a federal court to `reverse or modify,' and Rooker's limitation on statutory jurisdiction simply does not apply." The VLC argues that the district court's reliance on Young is misplaced. Instead, the VLC maintains that Heck v. Humphrey, 512 U.S. 477 (1994), and Homola v. McNamara, 59 F.3d 647, 650 (7th Cir. 1995), demonstrate that the dissolution of the state courts' injunctions allows for maintenance of the present action by the district court. Neither Heck or Homola supports the VLC's position.

In Heck, the Court reiterated its view that the Rooker-Feldman doctrine does not serve to bar a plaintiff's action that "will not demonstrate the invalidity of any outstanding criminal judgment ...." The Court stressed however, that the doctrine will serve as a bar if plaintiff's action requires the district court to " necessarily imply the invalidity of his conviction or sentence...." Heck, 512 U.S. at 487 (emphasis added). Similarly, in Homola, the Seventh Circuit reiterated the tenets of the Rooker-Feldman doctrine. See Homola, 59 F.3d

at 650. Neither of those cases stand for the proposition that once a state court decision has been reversed or modified, a federal district court may now pass upon the validity of that judgment, which is precisely what the district court recognized the VLC sought to do.[10]

The Rooker-Feldman doctrine divests the district court of jurisdiction where "entertaining the federal claim should be the equivalent of an appellate review of [the state court] order." FOCUS v. Allegheny County Ct. of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996). The controlling question in the Rooker-Feldman analysis is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision, not whether the state court judgment is presently subject to reversal or modification. Put another way, if "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual," Rooker-Feldman is implicated. Ernst v. City of Youth Servs., 108 F.3d 486, 491 (3d Cir. 1997); see also Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995) (Rooker-Feldman operates as a bar "if the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling"). The Rooker-Feldman doctrine is in no way dependent upon the temporal procedural posture of the state court judgment, rather, the doctrine reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeals.

In the instant case, the VLC seeks damages as a result of the state court's actions issuing the three injunctions at issue. It is axiomatic that in order for the VLC to obtain damages as a result of the state

_____

[10] The VLC's reliance on United States v. Owens, 54 F.3d 271 (6th Cir.), cert. dismissed, 116 S.Ct. 492 (1995), is equally flawed. In that case, the court concluded that Rooker-Feldman did not operate as a bar against entities that were not parties in the state court action, and thus where no state court judgment exists against the entities. The VLC's reliance on the court's statement "against whom there is no state court judgment" is at best inaccurate, and at the least a distortion of the court's discussion of the doctrine in that case.

16

court's issuance of the injunctions at issue, the federal district court would be required to determine that the state courts' decisions were wrong. The present action by the VLC requires a review of the state courts' decisions -- pure and simple.

A distinction must be made between actions seeking review of the state court decisions themselves and those cases challenging the constitutionality of the process by which the state court decisions resulted. For example, in Feldman, the Court recognized that the plaintiff was allowed to challenge the constitutionality of a rule under which he had been denied admission to the bar, but the Court prohibited the plaintiff from challenging in federal court, the denial itself. Feldman, 460 U.S. at 487-88; see also Van Harken v. City of Chicago, 103 F.3d 1346, 1349 (7th Cir. 1997) (court held that federal plaintiffs' action merely seeking a declaration that the process under which parking charges were imposed were constitutionally inadequate, and not challenging the judgment in any parking case, was not barred by Rooker-Feldman.).

The VLC does not merely seek a declaration that the process by which the state court injunctions were issued was unconstitutional. See supra Part A. Here, the VLC seeks a federal district court to declare the Virginia state courts' decision in error, and in turn, to award the VLC damages as a result of the issuance of those injunctions. Furthermore, the VLC's attempt to narrow application of the doctrine to apply only in circumstances where a state court decision is still subject to reversal or modification is untenable. The fact that the injunctions are no longer presently in effect does not alter the analysis under Rooker-Feldman. The VLC still seeks federal court review of the validity of those state court judgments, a review which the federal district court is not empowered to undertake.

Moreover, the VLC may not escape the jurisdictional bar of Rooker-Feldman by merely refashioning its attack on the state court judgments as a § 1983 claim. See Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997) ("cases make it clear that a litigant cannot circumvent Rooker-Feldman by recasting his or her lawsuit as a § 1983 action"). As this court has stated in Leonard v. Suthard, 927 F.2d 168 (4th Cir. 1991), where plaintiffs' claims are "inextricably intertwined" with the merits of a state court decision, then the district

17

court is being asked to review the state court decision, a result prohibited under Rooker-Feldman. Id. at 169-70.

The VLC's § 1983 claims that the Virginia statutes constitute an unconstitutional system of prior restraint are "inextricably intertwined" with the state court decisions issuing the injunctions. Federal review of the VLC's claim would require the district court to decide the validity or invalidity of the state court's decision to issue the injunctions. Moreover, as the district court recognized relying upon Young, the alleged harm suffered by the VLC is a result of the state court injunctions, not of the DPV's lawful use of the state court system. If the state courts did not issue the injunctions, the VLC would have no harm of which to complain. See also Homola, 59 F.3d at 650 ("A defendant who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review."). Thus, the district court is affirmed as the VLC's claims are barred by the Rooker-Feldman doctrine.**11**

_____

**11** Although the district court did not address the VLC's argument with respect to ex parte orders and the Rooker-Feldman doctrine, we are unpersuaded by the VLC's argument. First, the record reflects that the state courts in 1989 and 1993 held hearings, and the VLC was given an opportunity to be heard and contest the injunctions. Indeed, in the 1993 Fairfax action, LaRock's constitutional and other objections were noted on the face of the injunction itself. Second, the VLC may challenge the state court's order in the Virginia Supreme Court, the proper avenue for such an appeal. See Young, 90 F.3d at 1230 ("litigants who feel a state proceeding has violated their constitutional rights must appeal that decision through their state courts and thence to the Supreme Court."). In fact, LaRock apparently recognizes the proper course as she appealed the 1993 Fairfax injunction to the Virginia Supreme Court, which summarily dissolved the state court injunction. Third, the VLC's reliance upon Resolute Ins. Co. v. State of North Carolina, 397 F.2d 586 (4th Cir.), cert. denied, 393 U.S. 978 (1968), is misplaced. In that case, the court noted that "a federal court may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident or mistake." Although that statement was made within the context of res judicata, and not Rooker-Feldman, more importantly to the case at hand, the VLC has failed to identify any fraud or deception on the part of the DPV in the procurement of the injunctions at issue.

18

C. Supplemental Jurisdiction

After dismissing the federal claims, the district court similarly dismissed the remaining state law claims. The VLC claims that the district court erred in doing so.

28 U.S.C. § 1367(a) provides that "[i]n any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that ... form part of the same case or controversy ...." The statute goes on to provide that a district court may decline to exercise supplemental jurisdiction in certain circumstances. See 28 U.S.C.§ 1367(c)(3) ("the district court has dismissed all claims over which it has original jurisdiction ...").

In the instant case, the district court dismissed the federal claims over which it had original jurisdiction and then declined to exercise supplemental jurisdiction over the remaining state law claims. Although the district court did not cite to § 1367(c)(3), it is clear from its opinion, that the district court exercised its discretion not to assert supplemental jurisdiction over the state law claims.

In Shanaghan v. Cahill, 58 F.3d 106 (4th Cir. 1995), we noted that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." Id. at 110 (citing Noble v. White, 996 F.2d 797, 799 (5th Cir. 1993)). The doctrine of supplemental jurisdiction, the court emphasized, "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of concerns and values." Shanaghan, 58 F.2d at 106 (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988)).

In the instant case, no evidence of abuse of discretion by the district court exists in its decision to decline to exercise supplemental jurisdiction over the remaining state law claims. Thus, the district court is affirmed on this basis as well.

19

III.

CONCLUSION

The district court properly dismissed Count One on grounds of mootness and lack of ripeness. Counts Two, Three, Seven, and Eight were properly dismissed under the Rooker-Feldman doctrine. Finally, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims. The judgment of the district court is accordingly

AFFIRMED.

20